## LILLARD, Gdn., v. STONE et al.

No. 18418. Opinion Filed April 16, 1929.

Rehearing Denied May 28, 1929.

Biggers, Wilson & Aldridge, Blakemore & Barry, Kittie C. Sturdevant, and Lydick, McPherren & Jordan, for plaintiff in error.

N. A. Gibson and Ames, Cochran & Ames, for defendants in error.

HEFNER, J. The facts in this case disclose that Barney Thlocco, a full-blood Indian, died intestate prior to April 1, 1903, owning as his allotment the northwest quarter (N. W. 1-4) of section (9), township eighteen (18) north, range seven (7) east. Fulhochee Barney, and various other persons, each and all claimed to be heirs of Barney Thlocco, and sought to recover, as such heirs, the allotment set aside for him. On the other hand, the United States government claimed the allotment ought to be canceled because Barney Thlocco died prior to April 1, 1899. The government instituted an action in the federal court at Muskogee against Bessie Wildcat et al. to cancel the allotment. Various defendants, including Fulhochee Barney and her children, contested the cancellation and sought to quiet their title as heirs of Barney Thlocco. The land in controversy was in the possession of the defendant Black Panther Oil & Gas Company and its associates, and was operated for oil and gas purposes under returns of receiver's lease authorized and approved by the United States court, and under leases executed by Martha Jackson and Saber Jackson, her father, both of whom were parties in the Wildcat Case.

Fulhochee Barney and her associates had not agreed to the receiver and denied the right of the operators to take the oil and gas. Partial settlement was made between the operators on the one hand and Barnossee Unussee, Fulhochee Barney, and her children, and their attorneys on the other, which settlement and agreement was evidenced by the execution of the oil and gas lease, dated November 21, 1914.

The lease is the basis of this suit for an accounting, and its material provisions are as follows:

"This agreement, made and entered into the 21st day of November, 1914, by and between Barnossee Unussee, Fulhochee Barney, Siah Barney, Tommy Barney, Mollie Barney, Sam T. Palmer, K. B. Turner, M. E. Turner, Thos. H. Owen and J. C. Stone of the first part, hereinafter called lessors, and Black Panther Oil & Gas Company, a corporation, and Howard Weber of the second party, hereinafter called lessees and K .B. Turner and J. C. Stone, parties of the third part, as trustees, for the parties of the first part, witnesseth:

"That the said lessors for and in consideration of the sum of $1 in hand paid, and of the covenants and agreements hereinafter contained, as their respective interest may appear, have granted, bargained, leased, and let, and by these presents do grant, demise, lease and let unto said lessee for the sole and only purpose of mining and operating for oil and gas and of laying lines and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tract of land situated in Creek county, state of Oklahoma, described as follows, to wit: The northwest quarter of section 9, in township 18 north, and range 7 east, the Barney Thlocco allotment, containing 160 acres of land, more or less according to the government survey thereof.

"(1) It is agreed that this lease shall remain in force so long as oil or gas, or either of them, is produced from said land.

"(2) Parties of the second part shall pay or cause to be paid to parties of the third part, or their successors, in trust, for the use and benefit of parties of the first part, their heirs or assigns, as their interest may appear, one-tenth of the gross proceeds from the sale of all oil and gas produced from said premises, the same to be payable as the production is had, run and sold from and after the 7th day of November, 1914, it being agreed that there was on hand on the 7th day of November, 1914, 60,000 barrels of oil, and that the proceeds from the sale of the first 60,000 barrels of oil sold, on or after November 7, 1914, shall be received by the Black Panther Oil & Gas Company, and Weber; Provided, however, that said one-tenth royalty, in so far as same is produced from a certain five acres known as the 'Posey Tract,' to wit: The west half of the southwest quarter of the southwest quarter of the northwest quarter, shall not be payable pending final result of a case pending in the United States Court, at Muskogee, Oklahoma, No. 2017, in Equity, and styled, United States v. Bessie Wildcat et al., and said money shall be payable when and upon condition that final decree is entered in said cause against Posey, Chase F. Bassett, and others, claiming through an alleged filing upon said five-acre tract of said Posey. Provided, further, that said trustees shall pay or cause to be paid, from their said moneys as same becomes payable to said trustees to Howard Weber, or his order, the fourth part thereof until said one-fourth amounts to $6,000.

"(3) If parties of the first part, or any of them, win by final decree in said cause, they shall share according to their established interests in the land, the 25 per cent. royalty paid (to) and to be paid into the hands of the receiver in said cause, and the same shall be paid to said trustees, and after final decree, their royalty shall continue upon the 25 per cent. royalty basis, viz.:

"Twenty-five per cent. of the gross proceeds of sales so that they shall receive as from the first of development to the end of the lease that part of the 25 per cent. royalty, which their recovery may bear to the whole title, and said 10 per cent. royalty shall be deducted from the total amount due the parties of the first part upon the 25 per cent. royalty basis, and shall be repaid by the receiver to the Black Panther Oil & Gas Company, and Howard Weber, equally out of the 25 per cent. royalty now being impounded in the hands of J. F. Darby, receiver.

"(4) If the United States, by final decree, wins in said suit and cancels the allotment of Barney Thlocco, then upon payment of said 10 per cent. royalty, as provided herein, accrued to that date, this contract shall terminate.

"(5) If any person or persons, other than Martha Jackson, Barnessee Unussee, Fwlhochee Barney, Siah Barney, Tommy Barney, or Mollie Barney, shall win by final decree in said cause, the entire title of said property, then this contract shall terminate from date of said final decree upon payment of all sums due hereunder. In case Martha Jackson shall finally be decreed to be the owner of any portion of the land above described, and the other claimants, parties to this contract, shall be denied any ownership in said land by final decree, then in that event, the lessees herein, or their assigns, shall continue to pay to said trustees, for the use and benefit of the parties of the first part, a one-tenth royalty on all the oil and gas produced from that portion of said land finally decreed to Martha Jackson.

"(6) By final decree as used herein, is meant the final judgment or decree in said cause after decision by the Supreme Court of the United States, or the abandonment of the right of appeal."

During the pendency of the Wildcat Case in the federal court, and on the 21st day of October, 1916, Fulhochee Barney, Mollie

Barney, and Tommy Barney executed and delivered to T. E. Standley a deed which is as follows:

"That Fulhochee Barney, Mollie Barney and Tommy Barney, in consideration of the sum of $5,000, and other valuable consideration in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain sell, convey and quitclaim unto T. E. Standley, the following real property and premises, situated in Creek county, state of Oklahoma, to wit:

"All their right, title, interest, claim and demand in and to the Barney Thlocco allotment ,described as the northwest quarter of section 9, township 18 north, range 7 east, together with all their right, title, interest, claim and demand in and to all the royalties and proceeds of every kind and character accruing or to accrue therefrom and after the 14th day of October, 1916, together with all the improvements thereon, and the appurtenances thereunto belonging.

"To have and to hold the said described premises unto the said grantee, his heirs and assigns forever.

"Signed and delivered this 21st day of October, 1916."

Siah Barney had died prior to the execution of this deed and left Fulhochee Barney as her heir. The deed was approved by the county court of Okfuskee county.

For convenience, the parties of the first part to the oil and gas lease will be hereinafter referred to as Fulhochee Barney.

As a ground for refusing the accounting as such trustee, defendants plead and relied upon the above quitclaim deed.

Plaintiff says the quitclaim deed did not transfer to Standley any rights of Fulhochee Barney in the contract of November 21, 1914, for the following reasons:

(a) The 10 per cent. interest accruing to the Indians was not an incident to, nor an appurtenance of the real estate, but was nothing more than a chose in action consisting of personal property, and since the said deed on its face quitclaims "real property and premises" only, such instrument did not convey the personal estates, created by the oil and gas lease contract, which were not dependent on real estate.

(b) That in any event the ten per cent. accruing after June 17, 1919, the date of the decree of heirship, was an interest contingent upon a future event, and if it be real estate, could not have been included in a quitclaim deed executed in 1916, three years prior to the acquirement of the interest.

(c) That the contract of November, 1914,

assumes that the plaintiff owned at least a part of the fee and of the one-fourth royalty, together with the surface rights, which was an interest in the real estate and was reserved to the plaintiff by the contract.

(d) The plaintiff and her children did not obtain any interest in the land involved under the contract with the Black Panther Oil Company, as said company had no interest to convey, and under the terms of of said contract, the Black Panther Company did not attempt to convey to the plaintiff and her children any such interest, and the royalty payment due under section 5 of the contract was in the nature of a bonus and a personal estate.

The defendants, on the contrary, insist that the conveyance to T. E. Standley divested the plaintiff and the other grantors in said conveyance of all rights under the contract of November 21, 1914, and that the conveyance is a complete defense to the plaintiff's action for an accounting for funds received under the contract from and after October 14, 1916. The defendants, as a further defense, plead res adjudicata upon the issues raised.

After hearing the evidence and argument of counsel, the trial court entered its judgment against the plaintiffs and in favor of the defendants.

For a proper understanding of the questions raised, it is necessary to look to the facts at the time the lease was executed, its provisions. and the quitclaim deed and its provisions.

Prior to the time this oil and gas lease was executed, the United States government had filed a suit in the federal court to cancel the original allotment of Barney Thlocco, the original allottee. In addition to this, Martha Jackson was contending that she was the sole and only heir of Barney Thlocco. Fulhochee Barney claimed to be his heir and denied that Martha Jackson was an heir. At the time the lease was executed. no one knew who would be declared to be the owner of the land. Oil and gas leases had been executed by various claimants in favor of the Black Panther Oil Company. The oil company was the lessee and therefore was the owner of what is commonly known as the working interest under the oil and gas leases. In order that it might immediately develop the premises for oil and gas purposes, it agreed to pay a royalty of 25 per cent. to whomsoever should be declared to be the owner of the land. and in addition thereto it agreed

in event Martha Jackson should finally be decreed to be the owner of any portion of the land and Fulhochee Barney should be denied any ownership in the land, then the lessees or their assigns agreed to pay to the trustees for the use and benefit of Fulhochee Barney a one-tenth per cent. royalty of all the oil and gas produced from that portion of the land finally decreed to Martha Jackson. In other words, in event the land was declared to belong to Martha Jackson, the lessee agreed to pay two royalties, the one 25 per cent. to Martha Jackson; the other ten per cent. to Fulhochee Barney. It was the owner of the working interest under the lease and had a right to make the agreement to pay the two royalties. Then, at the time the lease contract was entered into. Fulhochee Barney knew that in event the original allotment was not canceled by the United States government, and in event Martha Jackson was declared to be the sole heir of the allottee and the owner of the land, she would receive 10 per cent. royalty from the beginning to the end of development. She also knew that if the allotment was not canceled and she was declared to be the owner of the land, then she would receive 25 per cent. royalty. These provisions were all in the lease contract and definitely agreed to by all parties including the lessee.

By the terms of the contract, we think the parties made the 10 per cent. a royalty just as much as they made the 25 per cent. a royalty.

Keeping these facts in mind, what became of the litigation that was pending at the time the oil and gas lease contract was entered into?

The federal district court dismissed the bill filed by the United States, from which judgment a writ of certiorari was taken to the United States Supreme Court. The opinion of that court may be found in the 244 U. S. 111, 61 L. Ed. 1024, rendered on May 21, 1917. It affirmed the judgment of the lower court and refused to cancel the allotment of Barney Thlocco. The case was remanded to the lower court for determination of the heirship of Barney Thlocco. The final decree adjudged Martha Jackson to be the sole heir of Barney Thlocco and excluded Fulhochee Barney and her children as heirs, and was rendered June 17, 1919.

On the 21st day of October, 1916, while the Wildcat litigation was still pending, and at a time when the trustees were actually receiving for her benefit the 10 per cent. royalty mentioned in the oil and gas lease, Fulhochee Barney, as grantor, executed an instrument in the form of a quitclaim deed in favor of T. E. Standley, grantee. By reference to this deed, it will be seen that she conveyed all her right, title, interest, claim, and demand in and to the Barney Thlocco allotment, together with all her right, title, interest, claim, and demand in and to all the royalty and proceeds of every kind and character accruing and to accrue from said land after the 14th day of October, 1916.

This instrument is more than a quitclaim deed. Fulhochee Barney, in her lease contract which she had executed, designated the ten per cent. as a 10 per cent. royalty. The quitclaim deed conveys all her right, title, and interest in and to the land, and in addition to this conveyance it goes further and conveys all her right, title, interest, claim, and demand in and to all the royalty and proceeds of every kind and character accruing **or to accrue** therefrom, **after the 14th day of October, 1916.** We think, since she, as lessor in the oil and gas lease, designated the ten per cent. as a "royalty" interest, when she, as grantor in the quitclaim deed, used the term "royalty" in the deed, she had reference to the royalties mentioned by her in the oil and gas lease. The quitclaim deed was executed by her in the light of the provisions in the oil and gas lease she had theretofore executed. She was the lessor in the one and the grantor in the other, and used the word "royalty" in both instruments. In our judgment, when she executed the deed, it was her intention to convey all interest that was reserved or created in her favor by the terms of the oil and gas lease.

We have carefully considered the very able arguments of the attorneys for the appellant, but we do not think the construction should be put upon the lease and deed contended for by them. We are, however, entirely in accord with the doctrine that an instrument in the form of a quitclaim deed does not convey an after-acquired title. We do not think the doctrine is applicable to the case at bar. In the first place, at the very time the quitclaim deed was executed, Fulhochee Barney was actually receiving a 10 per cent. royalty under the lease contract. That is to say, it was being paid to her trustees for her benefit, and it is conceded by all parties that at the time the deed was executed she was entitled to receive this amount regardless of what might happen in the pending litigation. Even if the government had won and the allotment had been canceled, as we understand the lease contract, she would

still receive the ten per cent. royalty up and until the date of the final decree canceling the allotment. At the time she executed the deed she had a present vested right to a ten per cent. royalty. This royalty was recognized by both the lessor and the lessee, and was actually paid by the lessee during the litigation pending in the federal court.

In the next place, the authorities cited to sustain the appellant's position as to the quitclaim deed are not in point, because the instrument under consideration is more than a quitclaim deed, because it not only specifically conveys all of the grantors' right in and to the land, but conveys all of the right, claim, and demand in and to all of the **royalty** and **proceeds** of every kind and character **accruing or to accrue** therefrom, after the 14th day of October, 1916. It not only conveyed all of the interest accruing, but it also conveyed all of the interest **to accrue.**

Under our view of the case, the quitclaim deed to T. E. Standley, dated October 21, 1916, divested Fulhochee Barney and the other grantors in the conveyance of all their rights under the oil and gas lease of November 21, 1914, and is a complete defense to the plaintiff's action for an accounting for funds received under the oil and gas lease from and after October 14, 1916.

As a further defense, the defendants plead that the accounting had been adjudicated and finally settled in an action brought in the district court of Okfuskee county, in 1920, by the Creek Trading Company, a corporation, Sam T. Palmer, and T. E. Standley, as plaintiffs, against Fulhochee Barney, J. C. Lillard, as guardian of Fulhochee Barney, J. C. Lillard, administrator of the estate of Tommy Barney, Wallace C. Cook, administrator of the estate of Mollie Barney; W. A. Pryor, Thomas H. Owen, K. B. Turner, M. E. Turner, and J. C. Stone.

On the 29th day of November, 1920, judgment was entered in that case and a portion thereof is as follows:

"The court further finds that on the 21st day of November, 1914, by written instrument of the date, the defendants, K. B. Turner and J. C. Stone, were made trustees or custodians of a certain fund to accrue from the operation of the Barney Thlocco allotment for oil and gas purposes, which allotment is the 'northwest quarter of section 9, township 18 north, range 7 east of the Indian base and meridian, situate in Creek county, Okla., and that the said trustees have fully accounted for all sums of money received by them and that no sum or sums is due from them to any of the parties to this action.

"It is therefore further ordered, adjudged and decreed that the other parties to this cause take nothing against said K. B. Turner, J. C. Stone, Thomas H. Owen, and M. E. Turner, and the rights of Fulhochee Barney and J. C. Lillard, as guardian of Fulhochee Barney, an incompetent, and as administrator of the estate of Tommy Barney and Mollie Barney, both deceased, have been finally settled and determined."

The plaintiff says she is not bound by this judgment for the following reasons:

(a) It was void because rendered as the result of an unlawful compromise agreement between the guardian of Fulhochee and her attorneys, without approval of the county court of Seminole county, without evidence before the district court, and without judicial sanction or investigation.

(b) The subject-matter of said action consisted solely of the ownership of the fund of $20,000, and the court had no power or jurisdiction to render a judgment in general accounting between the codefendants.

(c) Such action did not involve the construction of the quitclaim deed to Standley.

(d) If the court had jurisdiction to render a judgment in general accounting between Fulhochee and her trustees and attorneys, such accounting covered a period only up to October 14, 1916, and did not include moneys collected thereafter.

Upon examination of the pleadings in the Creek Trading Company Case, it is disclosed that the district court had jurisdiction of the parties and subject-matter, and that the pleadings, among other things, sought an accounting by the trustees on the one hand and the administrator and guardian on the other. Fulhochee Barney, after alleging the execution of the oil and gas lease, alleged that there had been produced and paid approximately $1,200,000 royalty due and payable to the lessors; that said trustees, Joseph C. Stone and K. B. Turner, had failed and refused, and still failed and refused, to account to said lessors for the royalty due under the oil and gas lease, and prayed for an accounting: In answer to her allegations the trustees denied the same, but admitted the execution of the oil and gas lease and that they had received payment from the Black Panther Oil & Gas Company. They further alleged that long before the commencement of the action they had justly performed and discharged their duties under

the contract, and that on or about the 1st day of March, 1919, they furnished Fulhochee Barney and other parties in interest detailed statement of all items of debits and credits arising on account of said contract of November 21, 1914.

From the pleadings it is apparent that the trustees and their associates did not present the accounting issue. They accepted it after it was tendered by Fulhochee Barney. The court had complete jurisdiction of the parties and the subject-matter and properly determined the conflicting claims of the parties, including the claims in reference to the accounting of the trustees. The accounting sought to be again litigated in this action was properly joined, tried, and determined in the Creek Trading Company Case. The judgment in that case is not shown to be void, and until it is set aside by some method provided by law, it is a complete defense to the accounting up to the date of the judgment. The judgment of the trial court should be, and is, affirmed.

LESTER, V. C. J., and HUNT, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

MASON, C. J., and CLARK and RILEY, JJ., absent and not participating.

Note.—"Judgments," 34 C. J. §1329, p. 921, n. 78. "Mines and Minerals," 40 C. J. §657, p. 1045, n. 95.